## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF ARKANSAS

RE:   **CALEB J. BEENE and MICHELLE BEENE**        **CASE NO. 4:19-bk-11110**
                                                                                    **CHAPTER 7**

### SECURED CREDITOR FIRST SERVICE BANK'S
### MOTION FOR RELIEF FROM STAY AND ABANDONMENT

Comes now First Service Bank (hereinafter referred to as "First Service"), Secured Creditor in this matter, by and through its attorneys, MILLAR JILES, LLP, and for its Motion for Relief from Stay, states as follows:

1.     This Court has jurisdiction over the parties and subject matter herein by virtue of Title 11 of the United States Code.

2.     On January 23, 2017, Debtors Caleb J. Beene, individually and in his capacity as sole proprietor of Beene Poultry Farm and Michelle Beene entered into a Business Loan Agreement with First Service whereby First Service to make a loan to Debtors in the amount of Three Hundred Fifty Four Thousand Five Hundred and No/100 Dollars ($354,500.00).   A true and correct copy of the Business Loan Agreement is attached hereto as Exhibit No. 1 and is incorporated herein by reference as if fully set out word for word.

3.     Pursuant to the Business Loan Agreement, on January 23, 2017 the Debtors jointly and severally made a Commercial Promissory Note payable to First Service in the principal amount of Three Hundred Fifty Four Thousand Five Hundred and No/100 Dollars ($354,500.00).  The Commercial Promissory Note dated January 23, 2017, was extended pursuant to a Commercial Promissory Note Extension of Current Obligation dated February 23, 2018.  The Commercial Promissory Note dated January 23, 2017 and the Commercial Promissory Note Extension of Current Obligation dated February 23, 2018 shall be

hereinafter collectively referred to as the "Note").  A true and correct copy of the Note is attached hereto as Exhibit No. 2 and is incorporated herein by reference as if fully set out word for word.

4.      As security for the indebtedness evidenced by the Note, on January 23, 2017 the Debtors executed a Commercial Real Estate Mortgage (hereinafter referred to as the "Mortgage") thereby granting First Service a first lien security interest in and to the following real property located at 18205 Highway 154, Danville, Arkansas (hereinafter referred to as the "Real Property"):

> A PART OF THE NE ¼ OF THE SE ¼ OF SECTION 4, T-5-N, R-21-W, IN YELL COUNTY, ARKANSAS, AND BEING MORE PARTICULARLY DESCRIBED AS: BEGINNING AT THE NW-CORNER OF THE NE ¼ OF THE SE ¼; THENCE S 88°15'00" E, ALONG THE NORTH LINE OF THE NE ¼ OF THE SE ¼, A DISTANCE OF 660.00 FEET; THENCE S 00°11'55" W, A DISTANCE OF 1030.00 FEET; THENCE S 89°19'53" E, A DISTANCE OF 374.00 FEET; THENCE S 00°11'55" W, A DISTANCE OF 299.58 FEET TO THE SOUTH LINE OF THE NE ¼ OF THE SE ¼; THENCE, ALONG THE SOUTH LINE, N 88°49'03" W, A DISTANCE OF 1033.90 FEET TO THE SW-CORNER OF THE NE ¼ OF THE SE ¼; THENCE N 00°11'55" E, A DISTANCE OF 1332.76 FEET TO THE POINT OF BEGINNING.

The Mortgage was filed and recorded in the Official Records of Yell County, Arkansas, on January 25, 2017, in Book 565 at Pages 394-401.  A true and correct copy of the Mortgage is attached hereto as Exhibit No. 3 and is incorporated herein by reference as if fully set out word for word.

5.      As additional security for the indebtedness evidenced by the Note, and as a material inducement to First Service to make the loan evidenced by the Note, on January 23, 2017 the Debtors executed a an Agricultural Security Agreement (hereinafter referred to as the "Security Agreement") thereby granting to First Service a first lien security interest in all Equipment of Debtors, including, without limitation the following specific property of

2

Debtors (hereinafter referred to as the "Collateral"):

> ALL FARM EQUIPMENT, NOW OWNED OR ACQUIRED HEREAFTER, INCLUDING BUT NOT LIMITED TO GENERATORS, TRANSFER SWITCHES, FUEL TANKS, SHEDS, LINES OF FEEDERS, HOPPERS, FEED LINE AUGER MOTORS, IPLUS CONTROL PANS, WINCHES FOR FEED LINES, BINS, FILL SYSTEMS, DIRECT DRIVE POWER UNITS, LINES OF DRINKERS, REGULATORS, MIDLINE AIR VENTS, END KITS, AV SERIES TUBE BROODERS ON BROOD END, AV SERIES TUBE BROODERS ON GROW OUT END, ALL LIGHTING, HIRED HAND TUNNEL FANS, STIR FANS, HIRED HAND VENT FANS, VENT DOORS, VENT MACHINE, PLATINUM PLUS CONTROLLER WITH TOGGLE RELAY PANELS, STATIC PRESSURE MODULE, ELECTRIC WATER METERS, TEMP PROBES, OUTSIDE TEMP PROBES, SURGE PROTECTOR, COMMUNICATOR ALARM, COPPER WIRING, MIGRATION FENCES, MEDICATORS, STEP LADDERS, TRASH CANS, DRILL AND CRANKS, HAND CRANKS, LITTLER BLADE, BLOWER, HOUSE KEEPERS, POULTRY HOUSE WASHER, AND ASSIGNMENT OF GROWER CHECKS BETWEEN DEBTOR AND WAYNE FARMS, LLC

First Service perfected its security interest in the Collateral pursuant: (i) a UCC Financing Statement which was filed and recorded with the Circuit Clerk of Yell County, Arkansas, in Book 565 at Pages 391-393, and (ii) a UCC Financing Statement filed with the Arkansas Secretary of State as Filing Number 40000141726853. A true and correct copy of the Security Agreement and the UCC Financing Statements is attached hereto as Exhibit No. 4 and is incorporated herein by reference as if fully set out word for word.

6.    As of March 12, 2019, there is due and owing by Debtors jointly and severally on the Note the sum of on the Note the sum of Three Hundred Ten Thousand Eight Hundred Fifty Four and 69/100 Dollars ($310,854.69) together with accrued interest, late fees, and costs of collection, including attorneys' fees. Interest continues to accrue on the Note from March 12, 2019, at the rate of Sixty and 58/100 Dollars ($60.58) per diem.

7.    The Real Property and Collateral were used by the Debtors in their poultry farm operations.

3

8.     Upon information and belief, the Debtors are not currently farming poultry.

9.     The automatic stay should be lifted and the Real Property and Collateral should be abandoned pursuant to 11 USC § 362(d)(2).  As evidenced by the Debtors' schedules, there is no equity in the Real Property and Collateral, and the Real Property and Collateral are not necessary for an effective reorganization as the Debtors have ceased poultry farming operations.

10.     The automatic stay should be lifted and the Real Property and Collateral and should further be abandoned pursuant to 11 USC § 362(d)(1) for cause.  The Debtors have failed to state their intention with regard to Real Property and Collateral in their schedules. Further, it is unknown if the Real Property and Collateral is currently insured.

11.     The Real Property and Collateral should be abandoned pursuant to 11 USC § 554 as to insure and otherwise care for the Real Property and Collateral is burdensome to the estate and the Real Property and Collateral are of inconsequential value or benefit to the Estate.

12.     The Collateral should further be abandoned pursuant to 11 USC § 554 as the Debtors have failed to schedule the Collateral as required by 11 USC § 521(a)(1).

13.     The Debtors have no right, privilege, power, or authority to alter and/or modify the rights of holders of secured claims, including First Service, if the secured creditor has a security interest in the Real Property or Collateral.

14.     This Court should immediately set these matters for hearing pursuant to 11 USC § 362(e) within the time limits prescribed therein or sooner and no extension should be granted nor should there be any involuntary waiver of such mandatory time limits.

4

15.     First Service should be granted its attorneys' fees and costs incurred herein consistent with the loan documents, the laws of the State of Arkansas, and the United States Bankruptcy Code.

**WHEREFORE**, premises considered, First Service prays that this Court will Order:

A.     abandoning the Real Property and Collateral immediately pursuant to 11 USC § 554, and that First Service  be granted relief from the automatic stay entered against it as provided in 11 USC § 362;

B.     that the automatic stay entered against First Service should be modified and lifted to allow First Service to proceed to foreclose its interest in the Real Property and Collateral;

C.     that the Debtors not be allowed to modify or alter any property rights of First Service; and,

D.     that First Service be granted its costs, attorneys' fees and any other remedy and relief available to it either in law or in equity pursuant to the United States Bankruptcy Code, Rules of Bankruptcy Procedure, laws of the State of Arkansas, and other applicable

state and federal statutes.

Respectfully submitted,

MILLAR JILES, LLP
The Frauenthal Building
904 Front Street
Conway, Arkansas 72032
(501) 329-1133
gjiles@millarjileslaw.com

March 12, 2019                    By: /s/ Gary D. Jiles
                                     Gary D. Jiles (88-118)

Attorneys for Secured Creditor,
First Service Bank

## CERTIFICATE OF SERVICE

I, Gary D. Jiles, do hereby certify that on this 12th day of March, 2019, a copy of the foregoing Secured Creditor First Service Bank's Motion for Relief from Stay and Abandonment has been served, via the CM/ECF system, on the following:

Gregory W. Harris, Esq.              Richard L. Cox
Attorney at Law                      Chapter 7 Panel Trustee
510 West 4th, Suite A              364 Long Point Road
North Little Rock, Arkansas 72114    Hot Springs, Arkansas 71913
<lgwharris@comcast.net>              <rlcpa@hsnp.com>

/s/ Gary D. Jiles
Gary D. Jiles

6

**BUSINESS LOAN AGREEMENT**



**FIRST SERVICE BANK**

410 Sylamore Avenue P.O. Box 1106 Mountain View, AR 72560
Phone number: (870) 269-7200

| AGREEMENT DATE | LOAN NUMBER | AGREEMENT/ACCOUNT NUMBER | OFFICER | TRANSACTION KEY |
|---|---|---|---|---|
| January 23, 2017 | ███416 | 7106416 | 609 | 3955 |

## BORROWER INFORMATION

Caleb Jerel Beene d/b/a Beene Poultry Farm
18205 Highway 154
Danville, AR 72833-6604

**Type of Business Entity:** Sole Proprietorship
**State of Organization/Formation:** Arkansas

Caleb Jerel Beene
18205 Highway 154
Danville, AR 72833-6604

**Type of Entity:** Individual
**State of Residence:** Arkansas

Michelle Lynn Beene
18205 Highway 154
Danville, AR 72833-6604

**Type of Entity:** Individual
**State of Residence:** Arkansas

**AGREEMENT.** This Business Loan Agreement will be referred to in this document as the "Agreement." This Agreement is made by First Service Bank, Mountain View (Lender), Caleb Jerel Beene d/b/a Beene Poultry Farm, Caleb Jerel Beene, and Michelle Lynn Beene (Borrower). The consideration is the promises, representations, and warranties made in this Agreement and the Related Documents.

**DEFINITIONS.** These definitions are used in this Agreement.

  "**Collateral**" means the Property that any Party to this Agreement or the Related Documents may pledge, mortgage, or give Lender a security interest in, regardless of where the Property is located and regardless of when it was or will be acquired, together with all replacements, substitutions, proceeds, and products of the Property.

  "**Events of Default**" means any of the events described in the "Events of Default" section of this Agreement.

  "**Financial Statements**" mean the balance sheets, earnings statements, and other financial information that any Party has, is, or will be giving to Lender.

  "**Indebtedness**" means the Loan and all other loans and indebtedness of Borrower to Lender, including but not limited to Lender's payments of insurance or taxes, all amounts Lender pays to protect its interest in the Collateral, overdrafts in deposit accounts with Lender, and all other indebtedness, obligations, and liabilities of Borrower to Lender, whether matured or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising.

  "**Loan**" means any loan or loans described in the "Identification of Loan" section of this Agreement.

  "**Parties**" means all Borrowers, Guarantors, and Hypothecators signing this Agreement.

  "**Party**" means any Borrower, Guarantor, or Hypothecator signing this Agreement.

  "**Property**" means the Parties' assets, regardless of what kind of assets they are.

  "**Related Documents**" means all documents, promissory notes, security agreements, leases, mortgages, construction loan agreements, assignments of leases and rents, guaranties, pledges, and all other documents or agreements executed in connection with this Agreement as such documents may be modified, amended, substituted, or renewed from time to time. The term includes both documents existing at the time of execution of this Agreement and documents executed after the date of this Agreement.

**IDENTIFICATION OF LOAN.** The following loan and all other indebtedness, obligations, and liabilities of Borrower to Lender, due or to become due, now existing or hereafter arising, as well as any and all amendments, modifications, extensions, and renewals thereof are subject to this Agreement:

  • Loan Number 7106416 with a principal amount of $354,500.00

**BORROWER'S REPRESENTATIONS AND WARRANTIES.** The statements made in this section will continue and remain in effect until all of the Indebtedness is fully paid to Lender. Each Borrower represents and warrants to Lender the following:

  **Borrower's Existence and Authority.** Each Borrower is duly formed and in good standing under all laws governing the Borrower and the Borrower's business, and each Borrower executing this Agreement has the power and authority to execute this Agreement and the Related Documents and to bind that Borrower to the obligation created in this Agreement and the Related Documents.

© 2004-2016 Compliance Systems, Inc. 7787948c-3b07fd55 - 2016.256.0.2
Business Loan Agreement - DL4004

www.compliancesystems.com

  

**EXHIBIT NO. 1**

**Financial Information and Filing.** All Financial Statements provided to Lender have been prepared and will continue to be prepared in accordance with generally accepted accounting principles, consistently applied, and fully and fairly present the financial condition of each Borrower, and there has been no material adverse change in Borrower's business, Property, or condition, either financial or otherwise, since the date of Borrower's latest Financial Statements. Each Borrower has filed all federal, state, and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and has paid all taxes, assessments, and other charges that are due and payable prior to the date of this Agreement. Each Borrower has made reasonable provision for these types of payments that are accrued but not yet payable. The Borrower does not know of any deficiency or additional assessment not disclosed in the Borrower's books and records.

All financial statements or records submitted to Lender via electronic means, including, but not limited to, facsimile, open internet communications or other telephonic or electronic methods, including, but not limited to, documents in Tagged Image Format Files ("TIFF") and Portable Document Format ("PDF") shall be treated as originals, and will be fully binding with full legal force and effect. Parties waive any right they may have to object to such treatment. Lender may rely on all such records in good faith as complete and accurate records produced or maintained by or on behalf of the Party submitting such records.

**Title and Encumbrances.** Borrower has good title to all of the Borrower's assets. All encumbrances on any part of the Property were disclosed to Lender in writing prior to the date of this Agreement.

**Compliance with General Law.** Each Borrower is in compliance with and will conduct its business and use its assets in compliance with all laws, regulations, ordinances, directives, and orders of any level of governmental authority that has jurisdiction over the Borrower, the Borrower's business, or the Borrower's assets.

**Environmental Laws.** Each Borrower is in compliance with all applicable laws and rules of federal, state, and local authorities affecting the environment, as all have been or are amended.

**No Litigation/No Misrepresentations.** There are no existing or pending suits or proceedings before any court, government agency, arbitration panel, administrative tribunal, or other body, or threatened against Borrower that may result in any material adverse change in the Borrower's business, property, or financial condition, and all representations and warranties in this Agreement and the Related Documents are true and correct and no material fact has been omitted.

**COVENANTS.** On the date of this Agreement and continuing until the Indebtedness is repaid and Borrower's obligations are fully performed, Borrower covenants as follows.

**Notices of Claims and Litigation/Notice of Adverse Events.** Borrower will promptly notify Lender in writing of all threatened and actual litigation, governmental proceeding, default, and every other occurrence that may have a material adverse effect on Borrower's business, financial condition, or the Property.

**Insurance.** Borrower will maintain adequate fire and extended risk insurance coverage, business interruption, workers' compensation, commercial general liability, and other insurance required by law or as may be required by Lender. All insurance policies will be in amounts, upon terms, and in a form acceptable to Lender. All policies must be carried with insurers acceptable to Lender. Borrower will provide evidence satisfactory to Lender of all insurance and that the policies are in full force and effect and all insurance on the Collateral will name Lender as a mortgagee and loss payee, will include a lender's loss payable endorsement, and will require 10 days advance written notice to Lender of any cancellation of coverage. If the Borrower fails to maintain required insurance, the absence of the required insurance will be an Event of Default. If this happens, Lender may buy the insurance, but will have no obligation to buy it. These amounts paid by Lender will be added to the Indebtedness and be payable on demand, at Lender's option.

**Confirmatory Documents and Actions.** Borrower agrees that on Lender's request, Borrower will do any act or execute any additional documents that are or may be required to make the terms of the Loan conform to the conditions contained in Lender's commitment to Borrower. Within five days of Lender's request, Borrower will furnish an estoppel certificate in a form Lender approves.

**Payment of Taxes.** Borrower will pay all taxes, levies, and assessments required by all local, state, and federal agencies. Borrower will make these payments when the amounts are due but before any penalty for late payment is imposed. Borrower's failure to promptly pay any tax, levy, or assessment due will be an Event of Default unless Borrower is diligently disputing the amount and Borrower has established a reserve account for the payment of the taxes if Borrower does not prevail in the dispute.

**Business Existence and Operations.** Borrower will keep Borrower's existence in its current organizational form in full force and effect unless Lender gives prior written consent to Borrower's proposed change. Borrower will not sell or merge Borrower's business or any part of Borrower's business without the Lender's prior written consent. Borrower will continue its business as currently conducted. Borrower will not change its name, its identification number, or its place of organization without Lender's prior written consent. Borrower will keep its books and records at the address in this Agreement. Borrower will promptly notify Lender in writing of any planned change in Borrower's principal place of business.

**Environmental Compliance.** Borrower will comply with all laws affecting the environment. Borrower will notify Lender within ten days after Borrower receives a summons, notice, citation, letter, or any other type of notice from any federal, state, or local authority, or any other person that claims Borrower is in violation of any law affecting the environment. Borrowers indemnify and hold Lender harmless from all violations of any environmental laws. This indemnity includes all costs and expenses incurred by Lender, including reasonable attorneys' fees, that are related to a violation of any environmental laws, even if the Indebtedness has been paid at the time any proceeding, claim, or action is started against Lender. Lender may itself or through Borrower arrange for an environmental audit prepared by a qualified environmental engineering firm acceptable to Lender to confirm the continued accuracy of Borrower's environmental representations and warranties. Borrower will pay for the environmental audit.

**Use of Proceeds.** Borrower will use the Loan proceeds in its business.

  

**Pay Limitations.** Borrower will not draw, permit, or pay anyone more than is reasonable for services provided to Borrower.

**No Borrowings, Guarantees, or Loans.** Borrower will not incur debt, borrow money, or guaranty any loan or other obligation. Borrower will not lend any money or sell any of Borrower's accounts receivable without Lender's prior written permission.

**No Encumbrances or Transfer of Assets.** Borrower will not mortgage, assign, hypothecate, or encumber any of the Property except to Lender without Lender's prior written permission. Borrower will not sell, transfer, or assign any of the Property without Lender's prior written permission. Borrower will not merge, consolidate, sell, transfer, license, lease, encumber or otherwise dispose of Borrower's Property or Borrower's business.

**No Dividends, Distributions and Redemptions.** Borrower will not pay or declare any dividend, or make any other distribution on account of any shares of any class of its stock or other ownership interest, or redeem, purchase, or otherwise acquire directly or indirectly, any shares of any class of its capital stock or other ownership interest.

**No Loans or Investments.** Borrower will not make any loans or advances to, or investments in, other persons, corporations or entities.

**Other Information.** From the date hereof until the Indebtedness is fully repaid and all of Debtors' obligations are fully performed and satisfied, the Parties cited below agree, unless otherwise consented to in writing by the Lender, they will submit the following:

Caleb Jerel Beene - Unaudited Financial Statements within 30 days after the end of each fiscal Year in form acceptable to Lender.

Caleb Jerel Beene - Unaudited Tax Returns within 30 days after the end of each fiscal Year in form acceptable to Lender.

Michelle Lynn Beene - Unaudited Financial Statements within 30 days after the end of each fiscal Year in form acceptable to Lender.

Michelle Lynn Beene - Unaudited Tax Returns within 30 days after the end of each fiscal Year in form acceptable to Lender.

**EVENTS OF DEFAULT.** The occurrence of any of the following events will be an Event of Default.

**Noncompliance with Lender Agreements.** Default by Borrower under any provision of this Agreement, the Related Documents, or any other agreement with Lender.

**False Statements.** If a Party made or makes a false or misleading misrepresentation in this Agreement, in the Related Documents, in any supporting material submitted to Lender or to third parties providing reports to Lender, or in Financial Statements given or to be given to Lender.

**Material Adverse Change.** Any material adverse change in the Borrower's business, financial condition, or the Property has occurred or is imminent; if the full performance of the obligations of any Party is materially impaired; or if the Collateral and its value or Lender's rights with respect thereto are materially impaired in any way. The existence or reasonable likelihood of litigation, governmental proceeding, default, or other event that may materially and adversely affect a Party's business, financial condition, or the Property.

**Insolvency or Liquidation.** A Party voluntarily suspends transaction of its business or does not generally pay debts as they mature. If a Party has or will make a general assignment for the benefit of creditors or will file, or have filed against it, any petition under federal bankruptcy law or under any other state or federal law providing for the relief of debtors if the resulting proceeding is not discharged within thirty days after filing. If a receiver, trustee, or custodian is or will be appointed for a Party.

**Default on Unrelated Debt.** If Borrower materially defaults under a provision of an agreement with a third party or if the indebtedness under such an agreement is accelerated.

**Judgments or Attachments.** If there is entered against a Party a judgment that materially affects the Borrower's business, financial condition, or the Property, or if a tax lien, levy, writ of attachment, garnishment, execution, or similar item is or will be issued against the Collateral or which materially affects Borrower's business, financial condition, or the Property, and which remains unpaid, unstayed on appeal, undischarged, unbonded, or undismissed for thirty days after it was issued.

**Collateral Impairment.** Lender has a good-faith belief that Lender's rights in the Collateral are or will soon be impaired or that the Collateral itself is or soon will be impaired.

**Termination of Existence or Change in Control.** If Borrower or Borrower's business is sold or merged or if Borrower or Borrower's business suspends business or ceases to exist.

**Insecurity.** If Lender has a good-faith belief that any Party is unable or will soon be unable to perform that Party's duties under this Agreement or under the Related Documents.

**Death.** The death of an individual who is a Party, a partner in a partnership that is a Party, a member in a limited liability company that is a Party, an officer of a corporation that is a Party, or an individual of similar position in any other type of business organization that is a Party.

**REMEDIES ON DEFAULT.**

**Remedies, No Waiver.** The remedies provided for in this Agreement, the Related Documents, and by law are cumulative and not exclusive. Lender reserves the right to exercise some, all, or none of its rights and reserves the right to exercise any right at any time that Lender has the right, without regard to how much time has passed since the right arose. Lender may exercise its rights in its sole, absolute discretion.

**Acceleration, Setoff.** Upon an Event of Default, the Loan and the Indebtedness may, at Lender's sole option, be declared immediately due and payable. Lender may apply the Parties' bank accounts and any other property held by Lender against the Indebtedness.

**ATTORNEYS' FEES AND OTHER COSTS.** Borrower agrees to pay all of Lender's costs and expenses incurred in connection with the enforcement of this Agreement, including without limitation, reasonable attorneys' fees, to the extent permitted by law.

**EXPENSES.** The Parties agree to pay all of Lender's reasonable expenses incidental to perfecting Lender's security interests and liens, all insurance premiums, Uniform Commercial Code search fees, and all reasonable fees incurred by Lender for audits, inspection, and copying of

  

the Parties' books and records. The Parties also agree to pay all reasonable costs and expenses of Lender in connection with the enforcement of Lender's rights and remedies under this Agreement, the Related Documents, and any other agreement between one or more Parties and Lender, and in connection with the preparation of all amendments, modifications, and waivers of consent with respect to this Agreement, including reasonable attorneys' fees.

**GOVERNING LAW/PARTIAL ILLEGALITY.** This Agreement and the Related Documents are and will be governed by, and the rights of the Parties will be determined by the laws of the state of Arkansas except to the extent that federal law controls. If any part, term, or provision of this Agreement is determined to be illegal or in conflict with state or federal law, the validity of the remaining portion or provisions of this Agreement will not be affected, unless the stricken portion or provision adversely affects Lender's risk of realizing Lender's anticipated return, in which case Lender may, in its sole discretion, deem the Loan matured.

**NOTICES.** All notices required under this Agreement must be in writing and will be considered given: (i) on the day of personal delivery, or (ii) one business day after deposit with a nationally recognized overnight courier service, or (iii) three business days after deposit with the United States Postal Service sent certified mail, return receipt requested. Any of these methods may be used to give notice. All notices must be sent to the party or parties entitled to notice at the addresses first set forth in this Agreement. Any Party may change its address for notice purposes on five days prior written notice to the other Parties.

**INTEGRATION AND AMENDMENT.** This Agreement and other written agreements among the Parties, including but not limited to the Related Documents, are the entire agreement of the Parties and will be interpreted as a group, one with the others. None of the Parties will be bound by anything not expressed in writing, and this Agreement cannot be modified except by a writing executed by those Parties burdened by the modification.

**FURTHER ACTION.** The Parties will, upon request of Lender, make, execute, acknowledge, and deliver to Lender the modified and additional instruments, documents, and agreements, and will take the further action that is reasonably required, to carry out the intent and purpose of this transaction.

**CONTINUING EFFECT.** Unless superseded by a later Business Loan Agreement, this Agreement will continue in full force and effect until all of the Parties' obligations to Lender are fully satisfied and the Loan and Indebtedness are fully repaid.

**HEADINGS.** All headings in this Agreement are included for reference only and do not have any effect on the interpretation of this Agreement.

**COUNTERPARTS.** This Agreement may be executed by the Parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement.

**TRANSFERS.** Borrower may not assign or transfer its rights or obligations under this Agreement without Lender's prior written consent. Lender may transfer its interest in Lender's sole discretion. Borrower waives all rights of offset and counterclaim Borrower has against Lender. The purchaser of a participation in the loan may enforce its interest regardless of any claims or defenses Borrower has against Lender.

**JURISDICTION.** The Parties agree to waive any objection to jurisdiction or venue on the ground that the Parties are not residents of Lender's locality. The Parties authorize any action brought to enforce the Parties' obligations to be instituted and prosecuted in any state court having jurisdiction or in the United States District Court for the District that includes Lender's location as set forth at the beginning of this Agreement. The Parties authorize Lender to elect the court at Lender's sole discretion.

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ADDITIONAL PROVISIONS.** Reference Exhibit A

**By signing this Agreement, Borrower acknowledges reading, understanding and agreeing to all its provisions and receipt of a copy hereof.**

| | |
|---|---|
| Caleb Jerel Beene        2017-01-23 | Michelle Lynn Beene        1-23-17 |
| Caleb Jerel Beene                Date | Michelle Lynn Beene                Date |
| Individually | Individually |

Caleb Jerel Beene d/b/a Beene Poultry Farm

| | |
|---|---|
| By: Caleb Jerel Beene        2017-01-23 | By: Michelle Lynn Beene        1-23-17 |
| By: Caleb Jerel Beene                Date | By: Michelle Lynn Beene                Date |
| Its: Owner | Its: Owner |

© 2004-2016 Compliance Systems, Inc. 7787948c-3b07fd55 - 2016.256.0.2
Business Loan Agreement - DL4004

www.compliancesystems.com

  

**LENDER:** First Service Bank, Mountain View

_[signature]_          1-23-17

By: Preston Hipp          Date

Its: Loan Officer

© 2004-2016 Compliance Systems, Inc. 7787948c-3b07fd55 - 2016.256.0.2
Business Loan Agreement - DL4004

www.compliancesystems.com




# EXHIBIT A TO BUSINESS LOAN AGREEMENT

Additional Borrower Representations and Warranties:

1.  Farm Service Agency ("FSA") may or has authorized a guaranty of a loan from Lender to Borrower for the amount and under the terms stated in the FSA Conditional Commitment (the "Commitment"). In consideration of the promises in this Agreement and for other goods and valuable consideration, Borrower and Lender agree that at all times which a Commitment is issued and guarantees all or part of the Loan, the following conditions apply:

    a.  Ownership and management have not changed without Lender's approval since the application was submitted;
    b.  Natural Resources Conservation Service ("NRCS") will be contacted prior to any land clearing, filling, leveling, dredging, or any other land use changes;
    c.  Borrower is compliant with environmental rules and regulations including the following: Fish & Wildlife, Tribal Historic Preservation Office, Storm water Pollution Prevention Plan and Arkansas Department of Environmental Quality permit;
    d.  The Permit and Storm water Pollution Prevention Plan will be posted on site until the construction is completed;
    e.  Poultry farm will maintain compliance with all Natural Resources Conservation Service program(s) and guidance;
    f.  Poultry farm will be registered yearly;
    g.  Confirmation that adequate water supply exists prior to any construction, and
    h.  All Borrower requirements to FSA and Lender including those noted in the Commitment will be followed.
    i.  If any real estate pledged as collateral is considered to be wetlands or highly erodible as determined by the Soil Conservation Service, FSA, NRCS or any other related agency, Borrower will comply with all requirements including but not limited to requirements in Exhibit M of Subpart G of part 1940 of Title 7 of the Code of Federal Regulations.

2.  The Borrower will utilize improved production practices as recommended by the County Extension Service and the University of Arkansas

3.  The Borrower will maintain monthly records of income and expenses and will have them available for review by the lender upon request.

4.  The Borrower will provide complete financial statements to the lender annually as of the last day of the business year.  These financial statements will include:

    a.  A current balance sheet
    a.  A copy of the previous year's Federal and State Income Tax Return as soon as they are available
    b.  Previous year's actual production history
    c.  Projected cash flow for the next production year
    d.  For Entity loans – a copy of a signed and dated financial statement and tax return on each individual

5.   The Borrower will not purchase or sell any capital asset without the prior consent of the lender.

6.   The Borrower will not incur any additional debt without the prior consent of the lender.  The Borrower will not co-sign the obligations of any other person during the term of the loan.

7.   The Borrower will maintain full coverage hazard insurance on all equipment and/or real estate improvements pledged as collateral for this loan with a mortgage clause added to the insurance policy requiring all benefits to be paid jointly with lender. The borrower will maintain collapse coverage on all poultry houses as well as builders risk during construction.

8.   A CCC-36, "Assignment of Payment" has been executed to cover ALL FSA and CCC program payments in which the loan Borrower has an interest in.  However, the loan Borrower agrees to submit any and all FSA and CCC program payments that were not paid directly to the bank within 10 days of receipt.

9.   The Borrower will inform the lender of any changes to the loan collateral and will provide a description of these changes to the lender within 10 days of loss or acquisition.

10. The Borrower will maintain family living expenses at the level shown on his annual cash flow projection.


_____                    _____
Caleb Jerel Beene                                        Michelle Lynn Beene

## COMMERCIAL PROMISSORY NOTE



**FIRST SERVICE BANK**

410 Sylamore Avenue P.O. Box 1106 Mountain View, AR 72560
Phone number: (870) 269-7200

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | MATURITY DATE | OFFICER | TRANSACTION KEY |
|---|---|---|---|---|---|
| ███16 | January 23, 2017 | $354,500.00 | January 23, 2027 | 609 | 3955 |

**LOAN PURPOSE:** Refinance 3 Broiler Houses for Wayne Farms, LLC

## BORROWER INFORMATION

Caleb Jerel Beene d/b/a Beene Poultry Farm
18205 Highway 154
Danville, AR 72833-6604

Caleb Jerel Beene
18205 Highway 154
Danville, AR 72833-6604

Michelle Lynn Beene
18205 Highway 154
Danville, AR 72833-6604

**NOTE.** This Commercial Promissory Note will be referred to in this document as the "Note."

**LENDER.** "Lender" means First Service Bank, Mountain View whose address is 410 Sylamore Avenue, P.O. Box 1106, Mountain View, Arkansas 72560 , its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity who signs this Note.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before the Maturity Date, the Borrower promises to pay the principal amount of Three Hundred Fifty-four Thousand Five Hundred and 00/100 Dollars ($354,500.00) and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This Note will be paid according to the following schedule: 39 consecutive payments of principal and interest beginning on May 23, 2017 and continuing on the same day of each quarter thereafter. The initial payment will be in the amount of $11,674.91. This will be followed by 1 payment of principal and interest in the amount of $11,674.79 on January 23, 2027. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date. All payments received by the Lender from the Borrower for application to this Note may be applied to the Borrower's obligations under this Note in such order as determined by the Lender.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** Interest will begin to accrue on the date of this Note. The initial variable interest rate on this Note will be 5.500% per annum. This interest rate may change on January 23, 2018, and on the same day of each year thereafter. Each date on which the interest rate may change is called the "Change Date." Beginning with the first Change Date, Lender will calculate the new interest rate based on Prime Rate as published in the Wall Street Journal in effect on the Change Date (the "Index") plus 1.750 percentage points (the "Margin"). If the Index is not available at that time, Lender will choose a new Index which is based on comparable information. The Index is used solely to establish a base from which the actual rate of interest payable under this Note will be calculated, and is not a reference to any actual rate of interest charged by any lender to any particular borrower.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. An increase in the interest rate will result in a higher payment amount. Interest on this Note is calculated on an **Actual/360** day basis. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of 10.000% of the amount of the regularly scheduled payment then past due, subject to a minimum charge of $25.00.

**PREPAYMENT PENALTY.** This Note is subject to a prepayment penalty. Payment of all unpaid principal, accrued and unpaid interest and all other fees then outstanding prior to the Maturity Date will result in a penalty that shall be equal to: 5% of outstanding principal during the first year and declining 1% each year thereafter in the event of full Note payoff during the first 5 years. In addition, if Borrower makes principal reductions in excess of 10% of the regularly scheduled principal reductions in any given year during the first 5 years, Borrower will be required to pay a 2% prepayment penalty on the portion of excess principal paid.

**SECURITY TO NOTE.** Security (the "Collateral") for this Note is granted pursuant to the following security document(s):

- A. Assignment of Life Insurance Policy with a cash value of $0.00 and a face value of $500,000.00, dated January 23, 2017 evidencing security interest in Life Insurance Policy #012412356L Issued by Southern Farm Bureau Life Insurance Company with a hold amount of $500,000.00.

**EXHIBIT NO. 2**

B. Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $354,500.00, dated January 23, 2017 evidencing a lien on the property located at 18205 Highway 154, Danville, AR 72833.

C. Security Agreement dated January 23, 2017 evidencing security interest in All Farm Equipment, Now owned or acquired hereafter, including but not limited to generators, transfer switches, fuel tanks, sheds, lines of feeders, hoppers, feed line auger motors, iplus control pans, winches for feed lines, bins, fill systems, direct drive power units, lines of drinkers, regulators, midline air vents, end kits, AV Series tube brooders on brood end, AV Series tube brooders on grow out end, all lighting, hired hand tunnel fans, stir fans, hired hand vent fans, vent doors, vent machine, platinum plus controller with toggle relay panels, static pressure module, electric water meters, temp probes, outside temp probes, surge protector, communicator alarm, copper wiring, migration fences, medicators, step ladders, trash cans, drill and cranks, hand cranks, littler blade, blower, house keepers, and poultry house washer

D. Assignment of Growers Checks between borrowers and Wayne Farms, LLC. dated January 23, 2017.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments and any other documents or agreements executed in connection with this Note whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents executed in connection with this Note; (c) any default by Borrower under the terms of any Related Documents in favor of Lender; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents in favor of Lender entered into or delivered in connection with this Note terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Note is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Note is governed by the laws of the state of Arkansas except to the extent that federal law controls.

© 2004-2016 Compliance Systems, Inc. 2283225e-b00fd3a8 - 2016.287.0.2
Commercial Promissory Note - DL4006

www.compliancesystems.com

  

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** Borrower agrees to pay all of Lender's costs and expenses in connection with the enforcement of this Note including, without limitation, reasonable attorneys' fees, to the extent permitted by law.

**ADDITIONAL PROVISIONS.**

HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or make possible the production of an agricultural commodity, as provided by 7 CFR Part 12

**By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.**

| | |
|---|---|
| Caleb Jerel Beene    20170123 | Michelle Lynn Beene    1-23-17 |
| Caleb Jerel Beene                Date | Michelle Lynn Beene                Date |
| Individually | Individually |

Caleb Jerel Beene d/b/a Beene Poultry Farm

| | |
|---|---|
| Caleb Beene    20170123 | Michelle Lynn Beene    1-23-17 |
| By: Caleb Jerel Beene            Date | By: Michelle Lynn Beene            Date |
| Its: Owner | Its: Owner |

**LENDER:** First Service Bank, Mountain View

Preston Hipp    1-23-17
By: Preston Hipp                Date
Its: Loan Officer

© 2004-2016 Compliance Systems, Inc. 2283225e-b00fd3a8 - 2016.287.0.2
Commercial Promissory Note - DL4006

www.compliancesystems.com






**COMMERCIAL PROMISSORY NOTE**
**EXTENSION OF CURRENT OBLIGATION**



**FIRST SERVICE BANK**

410 Sylamore Avenue P.O. Box 1106 Mountain View, AR 72560
Phone number: (870) 269-7200

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | MATURITY DATE | OFFICER | TRANSACTION KEY |
|---|---|---|---|---|---|
| ██6 | February 23, 2018 | $328,552.55 | January 23, 2027 | 609 | 7139 |

**LOAN PURPOSE:** Extend February payment and re-amortize payments over the remaining term

This note is an extension of the referenced loan(s).

| LOAN NUMBER | LOAN DATE | LOAN BALANCE |
|---|---|---|
| ██16 | 01/23/2017 | $354,500.00 |

## BORROWER INFORMATION

**CALEB JEREL BEENE**
18205 HWY 154
DANVILLE, AR 72833

**MICHELLE LYNN BEENE**
18205 STATE HWY 154
DANVILLE, AR 72833

**NOTE.** This Commercial Promissory Note will be referred to in this document as the "Note."

**LENDER.** "Lender" means First Service Bank, Mountain View whose address is 410 Sylamore Avenue, P.O. Box 1106, Mountain View, Arkansas 72560 , its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity identified above in the BORROWER INFORMATION section who signs this Note.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before the Maturity Date, the Borrower promises to pay the principal amount of Three Hundred Twenty-eight Thousand Five Hundred Fifty-two and 55/100 Dollars ($328,552.55) and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This Note will be paid according to the following schedule: 35 consecutive payments of principal and interest beginning on May 23, 2018 and continuing on the same day of each quarter thereafter. The initial payment will be in the amount of $12,043.54. This will be followed by 1 payment of principal and interest in the amount of $12,043.04 on January 23, 2027. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date. All payments received by the Lender from the Borrower for application to this Note may be applied to the Borrower's obligations under this Note in such order as determined by the Lender.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** Interest will begin to accrue on the date of this Note. The initial variable interest rate on this Note will be 6.250% per annum. This interest rate may change on January 23, 2019, and on the same day of each year thereafter. Each date on which the interest rate may change is called the "Change Date." Beginning with the first Change Date, Lender will calculate the new interest rate based on Prime Rate as published in the Wall Street Journal in effect on the Change Date (the "Index") plus 1.750 percentage points (the "Margin").

If the Index is not available at the time of the Change Date, Lender will choose a new Index which is based on comparable information. The Index is used solely to establish a base from which the actual rate of interest payable under the Note will be calculated, and is not a reference to any actual rate of interest charged by any lender to any particular borrower.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. An increase in the interest rate will result in a higher payment amount. Interest on this Note is calculated on an **Actual/360** day basis. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of 10.000% of the amount of the regularly scheduled payment then past due, subject to a minimum charge of $25.00.

**PREPAYMENT PENALTY.** This Note is subject to a prepayment penalty. Payment of all unpaid principal, accrued and unpaid interest and all other fees then outstanding prior to the Maturity Date will result in a penalty that shall be equal to: 5% of outstanding principal during the first

© 2004-2017 Compliance Systems, Inc. 52e0dfb4-dc0a1dec - 2017.214.0.3
Commercial Promissory Note - DL4006

Page 1 of 3

www.compliancesystems.com

 



year and declining 1% each year thereafter in the event of full Note payoff during the first 5 years. In addition, if Borrower makes principal reductions in excess of 10% of the regularly scheduled principal reductions in any given year during the first 5 years, Borrower will be required to pay a 2% prepayment penalty on the portion of excess principal paid.

**SECURITY TO NOTE.** Security (the "Collateral") for this Note is granted pursuant to the following security document(s):

- A. Assignment of Life Insurance Policy with a cash value of $0.00 and a face value of $500,000.00, dated January 23, 2017 evidencing security interest in Life Insurance Policy #012412356L Issued by Southern Farm Bureau Life Insurance Company with a hold amount of $500,000.00.

  B. Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $354,500.00, dated January 23, 2017 evidencing a lien on the property located at 18205 Highway 154, Danville, AR 72833.

  C. Security Agreement dated January 23, 2017 evidencing security interest in All Farm Equipment, Now owned or acquired hereafter, including but not limited to generators, transfer switches, fuel tanks, sheds, lines of feeders, hoppers, feed line auger motors, iplus control pans, winches for feed lines, bins, fill systems, direct drive power units, lines of drinkers, regulators, midline air vents, end kits, AV Series tube brooders on brood end, AV Series tube brooders on grow out end, all lighting, hired hand tunnel fans, stir fans, hired hand vent fans, vent doors, vent machine, platinum plus controller with toggle relay panels, static pressure module, electric water meters, temp probes, outside temp probes, surge protector, communicator alarm, copper wiring, migration fences, medicators, step ladders, trash cans, drill and cranks, hand cranks, littler blade, blower, house keepers, and poultry house washer

  D. Assignment of Growers Checks between borrowers and Wayne Farms, LLC. dated January 23, 2017.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments and any other documents or agreements executed in connection with this Note whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Borrower's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents; (c) any default by Borrower under the terms of any other agreement between Lender and Borrower; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents in favor of Lender entered into or delivered in connection with this Note terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Note is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns and successors of Borrower.





**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Note is governed by the laws of the state of Arkansas except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** Borrower agrees to pay all of Lender's costs and expenses in connection with the enforcement of this Note including, without limitation, reasonable attorneys' fees, to the extent permitted by law.

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION.** Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, as provided by 7 CFR Part 12.

**RATIFICATION AND CONTINUED VALIDITY.** Except for the terms expressly modified by this Note, the undersigned Borrowers hereby acknowledge they are still bound by the terms of the instruments and prior modifications, extensions and supplements evidencing the existing debt as if they were fully set forth and repeated in this Note and that those terms will continue to bind the Borrowers as provided in this Note and those instruments. Consent to this Note does not waive the right to strictly enforce any rights under this Note or the instruments evidencing the existing debt. Consent to this Note does not require the Borrowers to enter into another Note like this one in the future. The Borrowers and Lender agree that this Note shall not be construed as a novation or extinguishment of the existing debt, but a restatement of the existing debt with modifications.

By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.

CALEB JEREL BEENE             Date
Individually

MICHELLE LYNN BEENE        3-2-18   Date
Individually


LENDER: First Service Bank, Mountain View

By: Preston Hipp        3-2-18   Date
Its: Loan Officer

© 2004-2017 Compliance Systems, Inc. 52e0dfb4-dc0a1dec - 2017.214.0.3
Commercial Promissory Note - DL4006

www.compliancesystems.com





Clerk's Certification of Record
State of Arkansas - Yell County - Dardanelle Distr.
I, SHARON BARNETT, Circuit Clerk and Ex-Offic.
Recorder of the County aforesaid do
hereby certify that this instrument was
filed for the record on
1/25/2017 at 2:12:04 PM
and the same is now duly recorded in
Book 565 Pages 394 - 401
Witness my hand and the seal of said Court
01/25/2017 at 02:13 PM
SHARON BARNETT
Circuit Clerk and Ex-Officio Recorder
By D. Meinerstery D.C.



| THIS INSTRUMENT WAS PREPARED BY: | AFTER RECORDING RETURN TO: |
|---|---|
| First Service Bank, Loan Processing Center | First Service Bank, Loan Processing Center |
| P.O. Box 190 | P.O. Box 190 |
| Greenbrier, AR 72058 | Greenbrier, AR 72058 |

(Space Above This Line For Recording Data)

## COMMERCIAL REAL ESTATE MORTGAGE

This COMMERCIAL REAL ESTATE MORTGAGE ("Security Instrument") is made on January 23, 2017 between the mortgagor(s) Caleb Jerel Beene and Michelle Lynn Beene, husband and wife, whose address is 18205 Highway 154, Danville, Arkansas 72833-6604 ("Mortgagor"), and First Service Bank, Mountain View whose address is 410 Sylamore Avenue, P.O. Box 1106, Mountain View, Arkansas 72560 ("Lender"), which is organized and existing under the laws of the United States of America. Mortgagor owes Lender the principal sum of Three Hundred Fifty-four Thousand Five Hundred and 00/100 Dollars (U.S. $354,500.00), which is evidenced by the promissory note dated January 23, 2017. Mortgagor in consideration of this loan and any future loans extended by Lender in the principal amount of Three Hundred Fifty-four Thousand Five Hundred and 00/100 Dollars (U.S. $354,500.00) and for other valuable consideration, the receipt of which is acknowledged, hereby mortgages, grants and conveys to Lender, its successors and assigns, forever, the following described property located in the County of Yell, State of Arkansas:

Address: 18205 Highway 154, Danville, Arkansas 72833
Legal Description: Reference Attached Exhibit A

Together with all easements, appurtenances abutting streets and alleys, improvements, buildings, fixtures, tenements, hereditaments, equipment, rents, income, profits and royalties, personal goods of whatever description and all other rights and privileges including all minerals, oil, gas, water (whether groundwater, subterranean or otherwise), water rights (whether riparian, appropriate or otherwise, and whether or not appurtenant to the above-described real property), wells, well permits, ditches, ditch rights, reservoirs, reservoir rights, reservoir sites, storage rights, dams and water stock that may now, or at any time in the future, be located on and/or used in connection with the above-described real property, payment awards, amounts received from eminent domain, amounts received from any and all insurance payments, and timber which may now or later be located, situated, or affixed on and used in connection therewith (hereinafter called the "Property").

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Indebtedness and Security

© 2004-2016 Compliance Systems, Inc. 1cef26b3-93f1c664 - 2016.291.0.3
Commercial Real Estate Security Instrument - DL4007               Page 1 of 7               www.compliancesystems.com






565                    394                    **EXHIBIT NO. 3**

Instrument, whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Security Instrument by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Security Instrument secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto and every other indebtedness of any and every kind now or hereafter owing from Caleb Jerel Beene d/b/a Beene Poultry Farm, Caleb Jerel Beene, and Michelle Lynn Beene to First Service Bank, Mountain View, howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Security Instrument and all Related Documents (hereinafter all referred to as the "Indebtedness").

**MATURITY DATE.** The Indebtedness, if not paid earlier, shall be due on January 23, 2027.

**CROSS COLLATERALIZATION.** It is the expressed intent of Mortgagor to cross collateralize all of its Indebtedness and obligations to Lender, howsoever arising and whensoever incurred, except any obligation existing or arising against the principal dwelling of any Mortgagor.

**WARRANTIES.** Mortgagor, for itself, its heirs, personal representatives, successors, and assigns, represents, warrants, covenants and agrees with Lender, its successors and assigns, as follows:

**Performance of Obligations.** Mortgagor promises to perform all terms, conditions, and covenants of this Security Instrument and Related Documents in accordance with the terms contained therein.

**Defense and Title to Property.** At the time of execution and delivery of this instrument, Mortgagor is lawfully seised of the estate hereby conveyed and has the exclusive right to mortgage, grant, convey and assign the Property. Mortgagor covenants that the Property is unencumbered and free of all liens, except for encumbrances of record acceptable to Lender. Further, Mortgagor covenants that Mortgagor will warrant and defend generally the title to the Property against any and all claims and demands whatsoever, subject to the easements, restrictions, or other encumbrances of record acceptable to Lender, as may be listed in the schedule of exceptions to coverage in any abstract of title or title insurance policy insuring Lender's interest in the Property.

**Condition of Property.** Mortgagor promises at all times to preserve and to maintain the Property and every part thereof in good repair, working order, and condition and will from time to time, make all needful and proper repairs so that the value of the Property shall not in any way be impaired.

**Removal of any Part of the Property.** Mortgagor promises not to remove any part of the Property from its present location, except for replacement, maintenance and relocation in the ordinary course of business.

**Alterations to the Property.** Mortgagor promises to abstain from the commission of any waste on or in connection with the Property. Further, Mortgagor shall make no material alterations, additions or improvements of any type whatsoever to the Property, regardless of whether such alterations, additions or improvements would increase the value of the Property, nor permit anyone to do so except for tenant improvements and completion of items pursuant to approved plans and specifications, without Lender's prior written consent, which consent may be withheld by Lender in its sole discretion. Mortgagor will comply with all laws and regulations of all public authorities having jurisdiction over the Property including, without limitation, those relating to the use, occupancy and maintenance thereof and shall upon request promptly submit to Lender evidence of such compliance.

**Due on Sale - Lender's Consent.** Mortgagor shall not sell, further encumber or otherwise dispose of, except as herein provided, any or all of its interest in any part of or all of the Property without first obtaining the written consent of Lender. If any encumbrance, lien, transfer or sale or agreement for these is created, Lender may declare immediately due and payable, the entire balance of the Indebtedness.

**Insurance.** Mortgagor promises to keep the Property insured against such risks and in such form as may within the sole discretion of Lender be acceptable, causing Lender to be named as loss payee or if requested

© 2004-2016 Compliance Systems, Inc. 1eef26b3-93f1e664 - 2016.291.0.3
Commercial Real Estate Security Instrument - DL4007

www.compliancesystems.com




395

by Lender, as mortgagee. The insurance company shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. All insurance policies must provide that Lender will get a minimum of 10 days notice prior to cancellation. At Lender's discretion, Mortgagor may be required to produce receipts of paid premiums and renewal policies. If Mortgagor fails to obtain the required coverage, Lender may do so at Mortgagor's expense. Mortgagor hereby directs each and every insurer of the Property to make payment of loss to Lender with the proceeds to be applied, only at Lender's option, to the repair and replacement of the damage or loss or to be applied to the Indebtedness with the surplus, if any, to be paid by Lender to Mortgagor.

**Payment of Taxes and Other Applicable Charges.** Mortgagor promises to pay and to discharge liens, encumbrances, taxes, assessments, lease payments and any other charges relating to the Property when levied or assessed against Mortgagor or the Property.

**Environmental Laws and Hazardous or Toxic Materials.** Mortgagor and every tenant have been, are presently and shall continue to be in strict compliance with any applicable local, state and federal environmental laws and regulations. Further, neither Mortgagor nor any tenant shall manufacture, store, handle, discharge or dispose of hazardous or toxic materials as may be defined by any state or federal law on the Property, except to the extent the existence of such materials has been presently disclosed in writing to Lender. Mortgagor will immediately notify Lender in writing of any assertion or claim made by any party as to the possible violation of applicable state and federal environmental laws including the location of any hazardous or toxic materials on or about the Property. Mortgagor indemnifies and holds Lender harmless from, without limitation, any liability or expense of whatsoever nature incurred directly or indirectly out of or in connection with: (a) any environmental laws affecting all or any part of the Property or Mortgagor; (b) the past, present or future existence of any hazardous materials in, on, under, about, or emanating from or passing through the Property or any part thereof or any property adjacent thereto; (c) any past, present or future hazardous activity at or in connection with the Property or any part thereof; and (d) the noncompliance by Mortgagor or Mortgagor's failure to comply fully and timely with environmental laws.

**Financial Information.** Mortgagor agrees to supply Lender such financial and other information concerning its affairs and the status of any of its assets as Lender, from time to time, may reasonably request. Mortgagor further agrees to permit Lender to verify accounts as well as to inspect, copy and to examine the books, records and files of Mortgagor.

**Lender's Right to Enter.** Lender or Lender's agents shall have the right and access to inspect the Property at all reasonable times in order to attend to Lender's interests and ensure compliance with the terms of this Security Instrument. If the Property, or any part thereof, shall require inspection, repair or maintenance which Mortgagor has failed to provide, Lender, after reasonable notice, may enter upon the Property to effect such obligation; and the cost thereof shall be added to the Indebtedness and paid on Lender's demand by Mortgagor.

**ASSIGNMENT OF LEASES AND RENTS.** As additional security for the payment of the Indebtedness and the performance of the covenants contained herein, Mortgagor hereby assigns and transfers over to Lender all rents, income and profits ("Rents") under any present or future leases, subleases or licenses of the Property, including any guaranties, extensions, amendments or renewals thereof, from the use of the Property. So long as Mortgagor is not in default, Mortgagor may receive, collect and enjoy all Rents accruing from the Property, but not more than one month in advance of the due date. Lender may also require Mortgagor, tenant and any other user of the Property to make payments of Rents directly to Lender. However, by receiving any such payments, Lender is not, and shall not be considered, an agent for any party or entity. Any amounts collected may, at Lender's sole discretion, be applied to protect Lender's interest in the Property, including but not limited to the payment of taxes and insurance premiums and to the Indebtedness. At Lender's sole discretion, all leases, subleases and licenses must first be approved by Lender.

**CONDEMNATION.** Mortgagor shall give Lender notice of any action taken or threatened to be taken by private or public entities to appropriate the Property or any part thereof, through condemnation, eminent domain or any




other action. Further, Lender shall be permitted to participate or intervene in any of the above described proceedings in any manner it shall at its sole discretion determine. Lender is hereby given full power, right and authority to receive and receipt for any and all damages awarded as a result of the full or partial taking or appropriation and in its sole discretion, to apply said awards to the Indebtedness, whether or not then due or otherwise in accordance with applicable law. Unless Lender otherwise agrees in writing, any application of proceeds to the Indebtedness shall not extend or postpone the due date of the payments due under the Indebtedness or change the amount of such payments.

**MORTGAGOR'S ASSURANCES.** At any time, upon a request of Lender, Mortgagor will execute and deliver to Lender, and if appropriate, cause to be recorded, such further mortgages, assignments, assignments of leases and rents, security agreements, pledges, financing statements, or such other document as Lender may require, in Lender's sole discretion, to effectuate, complete and to perfect as well as to continue to preserve the Indebtedness, or the lien or security interest created by this Security Instrument.

**ATTORNEY-IN-FACT.** Mortgagor appoints Lender as attorney-in-fact on behalf of Mortgagor. If Mortgagor fails to fulfill any of Mortgagor's obligations under this Security Instrument or any Related Documents, including those obligations mentioned in the preceding paragraph, Lender as attorney-in-fact may fulfill the obligations without notice to Mortgagor. This power of attorney shall not be affected by the disability of the Mortgagor.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Security Instrument (each an "Event of Default"):

    (a)   Failure to make required payments when due under Indebtedness;

    (b)   Failure to perform or keep any of the covenants of this Security Instrument or a default under any of the Related Documents;

    (c)   The making of any oral or written statement or assertion to Lender that is false or misleading in any material respect by Mortgagor or any person obligated on the Indebtedness;

    (d)   The death, dissolution, insolvency, bankruptcy or receivership proceeding of Mortgagor or of any person or entity obligated on the Indebtedness;

    (e)   Any assignment by Mortgagor for the benefit of Mortgagor's creditors;

    (f)   A material adverse change occurs in the financial condition, ownership or management of Mortgagor or any person obligated on the Indebtedness; or

    (g)   Lender deems itself insecure for any reason whatsoever.

**REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, Lender may, without demand or notice, pay any or all taxes, assessments, premiums, and liens required to be paid by Mortgagor, effect any insurance provided for herein, make such repairs, cause the abstracts of title or title insurance policy and tax histories of the Property to be certified to date, or procure new abstracts of title or title insurance and tax histories in case none were furnished to it, and procure title reports covering the Property, including surveys. The amounts paid for any such purposes will be added to the Indebtedness and will bear interest at the rate of interest otherwise accruing on the Indebtedness until paid. In the event of foreclosure, the abstracts of title or title insurance shall become the property of Lender. All abstracts of title, title insurance, tax histories, surveys, and other documents pertaining to the Indebtedness will remain in Lender's possession until the Indebtedness is paid in full.

IN THE EVENT OF THE SALE OF THIS PROPERTY UNDER THE PROCEDURE FOR FORECLOSURE OF A SECURITY INSTRUMENT BY ADVERTISEMENT, AS PROVIDED BY APPLICABLE LAW, OR IN THE EVENT LENDER EXERCISES ITS RIGHTS UNDER THE ASSIGNMENT OF LEASES AND RENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT TO ANY NOTICE OTHER THAN THAT PROVIDED FOR SPECIFICALLY BY STATUTE, OR TO ANY JUDICIAL HEARING PRIOR TO SUCH SALE OR OTHER EXERCISE OF RIGHTS.

Upon the occurrence of an Event of Default, Lender may, without notice unless required by law, and at its option, declare the entire Indebtedness due and payable, as it may elect, regardless of the date or dates of maturity thereof and, if permitted by state law, is authorized and empowered to cause the Property to be sold at public auction, and

 

39-7

to execute and deliver to the purchaser or purchasers at such sale any deeds of conveyance good and sufficient at law, pursuant to the statute in such case made and provided, and out of the proceeds of the sale to retain the sums then due hereunder and all costs and charges of the sale, including attorneys' fees, rendering any surplus to the party or parties entitled to it. Any such sale or a sale made pursuant to a judgment or a decree for the foreclosure hereof may, at the option of Lender, be made en masse. The commencement of proceedings to foreclose this Security Instrument in any manner authorized by law shall be deemed as exercise of the above option.

Upon the occurrence of an Event of Default, Lender shall immediately be entitled to make application for and obtain the appointment of a receiver for the Property and of the earnings, income, issue and profits of it, with the powers as the court making the appointments confers. Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor.

**NO WAIVER.** No delay or failure of Lender to exercise any right, remedy, power or privilege hereunder shall affect that right, remedy, power or privilege nor shall any single or partial exercise thereof preclude the exercise of any right, remedy, power or privilege. No Lender delay or failure to demand strict adherence to the terms of this Security Instrument shall be deemed to constitute a course of conduct inconsistent with Lender's right at any time, before or after an event of default, to demand strict adherence to the terms of this Security Instrument and the Related Documents.

**JOINT AND SEVERAL LIABILITY.** If this Security Instrument should be signed by more than one person, all persons executing this Security Instrument agree that they shall be jointly and severally bound, where permitted by law.

**SURVIVAL.** Lender's rights in this Security Instrument will continue in its successors and assigns. This Security Instrument is binding on all heirs, executors, administrators, assigns and successors of Mortgagor.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Lender to any party is considered effective: (i) when it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means. Any such notice shall be addressed to the party given at the beginning of this Security Instrument unless an alternative address has been provided to Lender in writing. To the extent permitted by law, Mortgagor waives notice of Lender's acceptance of this Security Instrument, defenses based on suretyship, any defense arising from any election by Lender under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Lender is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, MORTGAGOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO LENDER EXERCISING ITS RIGHTS UNDER THIS SECURITY INSTRUMENT.**

**GENERAL WAIVER.** To the extent permitted by law, the Mortgagor severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest, suretyship defenses and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Mortgagor and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**WAIVER OF EXEMPTION AND REDEMPTION.** Mortgagor waives all right of homestead exemption pertaining to the Property and all rights of appraisal, sale and redemption allowed under any law or laws of the state of Arkansas, including specifically the right of redemption provided under Act No. 153 of the General Assembly of the state of Arkansas (A.C.A. § 18-49-106), and acts amendatory thereto. Also, if applicable, Mortgagor waives all claims of Dower and Curtesy.




565          398

**LENDER'S EXPENSES.** Mortgagor agrees to pay all expenses incurred by Lender in connection with enforcement of its rights under the Indebtedness, this Security Instrument or in the event Lender is made party to any litigation because of the existence of the Indebtedness or this Security Instrument, as well as court costs, collection charges and reasonable attorneys' fees and disbursements .

**ASSIGNABILITY.** Lender may assign or otherwise transfer this Security Instrument or any of Lender's rights under this Security Instrument without notice to Mortgagor. Mortgagor may not assign this Security Instrument or any part of the Security Instrument without the express written consent of Lender.

**GOVERNING LAW.** This Security Instrument will be governed by the laws of the State of Arkansas including all proceedings arising from this Security Instrument.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Security Instrument is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of the Security Instrument without invalidating the remainder of either the affected provision or this Security Instrument.

**UNIFORM COMMERCIAL CODE (U.C.C.)** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. Mortgagor agrees that this Security Instrument shall suffice as a financing statement and may therefore be filed of record as a financing statement for the purposes of Article 9 of the Uniform Commercial Code. Mortgagor authorizes Lender to file any financing statements required under the Uniform Commercial Code.

**ORAL AGREEMENTS DISCLAIMER.** This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ADDITIONAL PROVISIONS.**

HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or make possible the production of an agricultural commodity, as provided by 7 CFR Part 12

**By signing this Security Instrument, each Mortgagor acknowledges that all provisions have been read and understood.**

| | |
|---|---|
| Caleb Jerel Beene          Date | Michelle Lynn Beene          Date |
| Individually | Individually |

Caleb Jerel Beene d/b/a Beene Poultry Farm

| | |
|---|---|
| By: Caleb Jerel Beene          Date | By: Michelle Lynn Beene          Date |
| Its: Owner | Its: Owner |

**Witnessed by:**

| | |
|---|---|
| Name:          Date | Name:          Date |

© 2004-2016 Compliance Systems, Inc. 1cef26b3-93f1c664 - 2016.291.0.3
Commercial Real Estate Security Instrument - DL4007                    Page 6 of 7                    www.compliancesystems.com

399

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF          ARKANSAS            )
COUNTY OF      Pope                       )

On this the 23 of January, 2017        , before me,   Shawn Blevins                     ,
the undersigned officer, personally appeared Caleb Jerel Beene, A married person, known to me to be the person
whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the
purposes and consideration therein contained. In witness whereof, I hereunto set my hand and my official seal.

My commission expires:                      Shawn Blevins

(Official Seal)
```
STATE OF        SHAWN M. BLEVINS
NOTARY          Pope County
PUBLIC          Commission #12348399
ARKANSAS        My Comm. Exp.2/19/2026
```
                                            Identification Number

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF          ARKANSAS            )
COUNTY OF      Pope                       )

On this the 23 of January 2017        , before me,   Shawn Blevins                     ,
the undersigned officer, personally appeared Michelle Lynn Beene, A married person, known to me to be the
person whose name is subscribed to the within instrument and acknowledged that he/she executed the same for
the purposes and consideration therein contained. In witness whereof, I hereunto set my hand and my official seal.

My commission expires:                      Shawn M. Blevins

(Official Seal)
```
STATE OF        SHAWN M. BLEVINS
NOTARY          Pope County
PUBLIC          Commission #12348399
ARKANSAS        My Comm. Exp.2/19/2026
```
                                            Identification Number

---

© 2004-2016 Compliance Systems, Inc. 1eef26b3-93f1c664 - 2016.291.0.3
Commercial Real Estate Security Instrument - DL4007          Page 7 of 7          www.compliancesystems.com

 

565                              400

# EXHIBIT A

A part of the NE ¼ of the SE ¼ of Section 4, T-5-N, R-21-W, in Yell County, Arkansas, and being more particularly described as:  Beginning at the NW-Corner of the NE ¼ of the SE ¼; thence S 88° 15' 00" E, along the North line of the NE ¼ of the SE ¼, a distance of 660.00 feet; thence S 00° 11' 55" W, a distance of 1030.00 feet; thence S 89° 19' 53" E, a distance of 374.00 feet; thence S 00° 11' 55" W, a distance of 299.58 feet to the South line of the NE ¼ of the SE ¼; thence, along the South line, N 88° 49' 03" W, a distance of 1033.90 feet to the SW-Corner of the NE ¼ of the SE ¼; thence N 00° 11' 55" E, a distance of 1332.76 feet to the point of beginning.

401

## AGRICULTURAL SECURITY AGREEMENT



**FIRST SERVICE BANK**

410 Sylamore Avenue P.O. Box 1106 Mountain View, AR 72560
Phone number: (870) 269-7200

| LOAN NUMBER | AGREEMENT DATE | OFFICER | TRANSACTION KEY |
|---|---|---|---|
| ███416 | January 23, 2017 | 609 | 3955 |

### BORROWER INFORMATION

| | | |
|---|---|---|
| Caleb Jerel Beene d/b/a Beene Poultry Farm | Caleb Jerel Beene | Michelle Lynn Beene |
| 18205 Highway 154 | 18205 Highway 154 | 18205 Highway 154 |
| Danville, AR 72833-6604 | Danville, AR 72833-6604 | Danville, AR 72833-6604 |

### COLLATERAL OWNER INFORMATION

| | | |
|---|---|---|
| Caleb Jerel Beene d/b/a Beene Poultry Farm | Caleb Jerel Beene | Michelle Lynn Beene |
| 18205 Highway 154 | 18205 Highway 154 | 18205 Highway 154 |
| Danville, AR 72833-6604 | Danville, AR 72833-6604 | Danville, AR 72833-6604 |

**AGREEMENT.** For purposes of this document, the term "Agreement" is used when reference is made to this Agricultural Security Agreement.

**LENDER.** "Lender" means First Service Bank, Mountain View whose address is 410 Sylamore Avenue, P.O. Box 1106, Mountain View, Arkansas 72560 , its successors and assigns.

**DEBTOR.** For purposes of this Agreement, "Debtor" refers to any party to this Agreement, whose name and address is recited above, and who executes this Agreement.

**SECURITY INTEREST GRANT.** Debtor, in consideration of the Obligations to Lender, as defined in the "OBLIGATIONS" provision below, hereby agrees to all of the terms of this Agreement and further hereby specifically grants Lender a continuing security interest in the Collateral as defined in the "DESCRIPTION OF COLLATERAL" provision below. Debtor further grants Lender a security interest in the proceeds of said Collateral; the proceeds of hazard insurance and eminent domain or condemnation awards involving the Collateral; all products of, and accessions to, such Collateral or interests therein; any and all deposits or other sums at any time credited by or due from Lender to Debtor; and any and all instruments, documents, policies, and certificates of insurance, securities, goods, accounts receivable, choses in action, chattel paper, cash, property, and the proceeds thereof (whether or not the same are Collateral or proceeds thereof hereunder), owned by Debtor or in which Debtor has an interest which are now or at any time hereafter in possession or control of Lender, or in transit by mail or carrier to or from Lender, or in possession of any third party acting on Lender's behalf, without regard to whether Lender received the same in pledge, for safekeeping, as agent or otherwise, or whether Lender has conditionally released the same. Debtor's grant of a continuing security interest in the foregoing described Collateral secures to Lender the payment of all loans, advances, and extensions of credit from Lender to Borrower, including all renewals and extensions thereof, and any and all obligations of every kind whatsoever, whether heretofore, now, or hereafter existing or arising between Lender and Borrower and howsoever incurred or evidenced, whether primary, secondary, contingent, or otherwise.

**OBLIGATIONS.** As used in this Agreement, the term "Obligations" shall mean any and all of Debtor's obligations to Lender, whether they arise under this Agreement or the note, loan agreement, guaranty, or other evidence of debt executed in connection with this Agreement, or under any other mortgage, trust deed, deed of trust, security deed, security agreement, note, lease, instrument, contract, document, or other similar writing heretofore, now, or hereafter executed by the Borrower to Lender, including any renewals, extensions and modifications thereof, and including oral agreements and obligations arising by operation of law. The Obligations shall also include all expenditures that Lender may make under the terms of this Agreement or for the benefit of Borrower or Debtor, all interest, costs, expenses, and attorneys' fees accruing to or incurred by Lender in enforcing the Obligations or in the protection, maintenance, preservation, or liquidation of the Collateral, and any of the foregoing that may arise after the filing of any petition by or against Borrower or Debtor under the Bankruptcy Code, irrespective of whether the obligations do not accrue because of the automatic stay under Bankruptcy Code Section 362 or otherwise.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Agreement whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Agreement by reference thereto, with the same force and effect as if fully set forth herein.

**DESCRIPTION OF COLLATERAL.** The collateral covered by this Agreement (the "Collateral") is all of the Debtor's property described below which the Debtor now owns or may hereafter acquire or create and all proceeds and products thereof, whether tangible or intangible,

© 2004-2016 Compliance Systems, Inc. 981427b3-db8a6470 - 2016.287.0.2
Agricultural - Security Agreement DL4008

www.compliancesystems.com

  

**EXHIBIT NO. 4**

including proceeds of insurance and which may include, but shall not be limited to, any items listed on any schedule or list attached hereto. The Collateral described has the meanings contained in the Uniform Commercial Code as adopted in the state where the Lender is located.

**Equipment.** "Equipment" shall consist of all goods of the Debtor that are not inventory, farm products, or consumer goods. Equipment includes, but is not limited to, all equipment and fixtures of every nature and description whatsoever, now owned or hereafter acquired by Debtor, wherever located, including all machinery, manufacturing equipment, shop equipment, furnishings, furniture, record keeping equipment, and vehicles, together with all accessions, parts, embedded software, attachments, accessories, tools, and dies, or appurtenances thereto intended for use in connection therewith, and all substitutions, betterments, and replacements thereof and additions thereto.

**Specific Collateral.** "Specific" refers to the specific property, together with all related rights, described below.

SPECIFIC COLLATERAL DESCRIPTION: All Farm Equipment, Now owned or acquired hereafter, including but not limited to generators, transfer switches, fuel tanks, sheds, lines of feeders, hoppers, feed line auger motors, iplus control pans, winches for feed lines, bins, fill systems, direct drive power units, lines of drinkers, regulators, midline air vents, end kits, AV Series tube brooders on brood end, AV Series tube brooders on grow out end, all lighting, hired hand tunnel fans, stir fans, hired hand vent fans, vent doors, vent machine, platinum plus controller with toggle relay panels, static pressure module, electric water meters, temp probes, outside temp probes, surge protector, communicator alarm, copper wiring, migration fences, medicators, step ladders, trash cans, drill and cranks, hand cranks, littler blade, blower, house keepers, poultry house washer, and Assignment of Grower checks between Borrower and Wayne Farms, LLC.

**WARRANTIES.** The Debtor warrants the following: The Debtor is presently engaged in a farming operation with respect to all Collateral classified as Farm Equipment or Farm Products, including but not limited to raising, cultivating, propagating, fattening, grazing, or other farming livestock, or aquacultural operation, and Debtor will not discontinue Debtor's farming operation without prior written notification to Lender (Debtor's farming operation will hereinafter be included in the term "business" whenever said term is used in this Agreement to refer to Debtor's business; Debtor has or will acquire free and clear title to all of the Collateral, unless otherwise provided herein; the security interest granted to the Lender shall be a first security interest, and the Debtor will defend same to the Lender against the claims and demands of all persons; the Debtor will fully cooperate in placing, perfecting, or maintaining Lender's lien or security interest; the Debtor agrees to take whatever actions requested by Lender to perfect and continue Lender's security interest on the Collateral; the Debtor agrees not to allow or permit any lien, security interest, adverse claim, charge, or encumbrance of any kind against the Collateral or any part thereof, without the Lender's prior written consent;all of the Collateral is located in the state of the Debtor's address specified at the beginning of this Agreement, unless otherwise certified to and agreed to by the Lender, or, alternatively, is in possession of the Lender; the Debtor will not remove or change the location of any Collateral without the Lender's prior written consent; the Debtor will use the Collateral only in the conduct of its own business, in a careful and proper manner; the Debtor will not use the Collateral or permit it to be used for any unlawful purpose; except as otherwise provided in this Agreement with respect to inventory, Debtor will not, without the Lender's prior written consent, sell, assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral, or any part thereof, or any interest therein, nor will Debtor offer to sell, assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral, or any part thereof, or any interest therein; the Debtor will not conduct business under any name other than that given at the beginning of this Agreement, nor change, nor reorganize the type of business entity as described, except upon the prior written approval of the Lender, in which event the Debtor agrees to execute any documentation of whatsoever character or nature demanded by the Lender for filing or recording, at the Debtor's expense, before such change occurs; the information regarding Debtor's state of organization or formation as set forth in the Resolution is correct, and Debtor further warrants that Debtor will not change Debtor's state of organization or formation without Lender's prior written consent and will assist Lender with any changes to any documents, filings, or other records resulting or required therefrom; the Debtor will keep all records of account, documents, evidence of title, and all other documentation regarding its business and the Collateral at the address specified at the beginning of this Agreement, unless notice thereof is given to the Lender at least ten (10) days prior to the change of any address for the keeping of such records; the Debtor will, at all times, maintain the Collateral in good condition and repair and will not sell or remove same except as to inventory in the ordinary course of business; the Debtor is a legally created business entity, as described before, and it has the power, and the person signing is duly authorized, to enter into this Agreement; the execution of this Agreement will not create any breach of any provision of the Debtor's organizational documents (Articles of Incorporation and By-Laws if the Debtor is a corporation, Articles of Organization and Operating Agreement if the Debtor is a limited liability company, or Certificate of Limited Partnership (if applicable) or Partnership Agreement if the Debtor is a partnership), or any other agreement to which the Debtor is or may become a party; all financial information and statements delivered by the Debtor to the Lender to obtain loans and extensions of credit are true and correct and are prepared in accordance with generally accepted accounting principles; there has been no material adverse change in the financial condition of the Debtor since it last submitted any financial information to the Lender; there are no actions or proceedings, including set-off or counterclaim, which are threatened or pending against the Debtor which may result in any material adverse change in the Debtor's financial condition or which might materially affect any of the Debtor's assets; and the Debtor has duly filed all federal, state, municipal, and other governmental tax returns, and has obtained all licenses, permits, and the like which the Debtor is required by law to file or obtain, and all such taxes and fees for such licenses and permits required to be paid, have been paid in full.

**INSURANCE.** The Debtor agrees that it will, at its own expense, fully insure the Collateral against all loss or damage for any risk of whatsoever nature in such amounts, with such companies, and under such policies as shall be satisfactory to the Lender. All policies shall expressly provide that the Lender shall be the loss payee or, alternatively, if requested by Lender, mortgagee. The Lender is granted a security interest in the proceeds of such insurance and may apply such proceeds as it may receive toward the payment of the Obligations, whether or not due, in such order as the Lender may in its sole discretion determine. The Debtor agrees to maintain, at its own expense, public liability and property damage insurance upon all its other property, to provide such policies in such form as the Lender may approve, and to furnish the Lender with copies of other evidence of such policies and evidence of the payments of the premiums thereon. All policies of insurance shall provide for a minimum ten days' written notice of cancellation to Lender. At the request of Lender, such policies of insurance shall be delivered

  

to and held by Lender. Debtor agrees that Lender is authorized to act as attorney for Debtor in obtaining, adjusting, settling, and canceling such insurance and endorsing any drafts or instruments issued or connected with such insurance. Debtor specifically authorizes Lender to disclose information obtained in conjunction with this Agreement and from policies of insurance to prospective insurers of the Collateral. If the Debtor at any time fails to obtain or to maintain any of the insurance required above or pay any premium in whole or in part relating thereto, the Lender, without waiving any default hereunder, may make such payment or obtain such policies as the Lender, in its sole discretion, deems advisable to protect the Debtor's property. All costs incurred by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges thereby incurred, shall become a part of the Obligations and shall be payable on demand.

**ADDITIONAL COLLATERAL.** In the event that Lender should, at any time, determine that the Collateral or Lender's security interest in the Collateral is impaired, insufficient, or has declined or may decline in value, or if Lender should deem that payment of the Obligations is insecure, time being of the very essence, then Lender may require, and Debtor agrees to furnish, additional Collateral that is satisfactory to Lender. Lender's request for additional collateral may be oral or in writing delivered by United States mail addressed to Debtor and shall not affect any other subsequent right of the Lender to request additional Collateral.

**FINANCING STATEMENT(S) AND LIEN PERFECTION.** Lender is authorized to file a conforming financing statement or statements to perfect its security interest in the Collateral, as provided in Revised Article 9, Uniform Commercial Code - Secured Transactions. Debtor agrees to provide such information, supplements, and other documents as Lender may from time to time require to supplement or amend such financing statement filings, in order to comply with applicable state or federal law and to preserve and protect the Lender's rights in the Collateral. The Debtor further grants the Lender a power of attorney to execute any and all documents necessary for the Lender to perfect or maintain perfection of its security interest in the Collateral, and to change or correct any error on any financing statement or any other document necessary for proper placement of a lien on any Collateral which is subject to this Agreement.

**LANDLORD'S WAIVER.** Upon request, Debtor shall furnish to Lender, in a form and upon such terms as are acceptable to Lender, a landlord's waiver of all liens with respect to any Collateral covered by this Agreement that is or may be located upon leased premises.

**RELATIONSHIP TO OTHER AGREEMENTS.** This Agreement and the security interests (and pledges and assignments, as applicable) herein granted are in addition to (and not in substitution, novation or discharge of) any and all prior or contemporaneous security agreements, security interest, pledges, assignments, mortgages, liens, rights, titles, or other interests in favor of Lender or assigned to Lender by others in connection with the Obligations. All rights and remedies of Lender in all such agreements are cumulative.

**TAXES, LIENS, ETC.** The Debtor agrees to pay all taxes, levies, judgments, assessments, and charges of any nature whatsoever relating to the Collateral or to the Debtor's business. If the Debtor fails to pay such taxes or other charges, the Lender, at its sole discretion, may pay such charges on behalf of the Debtor; and all sums so dispensed by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges relating thereto, shall become a part of the Obligations and shall be payable on demand.

**ENVIRONMENTAL HAZARDS.** Debtor certifies that the Collateral has never been, and so long as this Agreement continues to be a lien on the Collateral, never will be used in violation of any local, state or federal environmental laws, statutes or regulations or used for the generation, storage, manufacture, transportation, disposal, treatment, release or threatened release of any hazardous substances and Debtor will immediately notify Lender in writing of any assertion made by any party to the contrary. Debtor indemnifies and holds Lender and Lender's directors, officers, employees, and agents harmless from any liability or expense of whatsoever nature, including reasonable attorneys' fees, incurred directly or indirectly as a result of Debtor's involvement with hazardous or environmentally harmful substances as may be defined or regulated as such under any local, state or federal law or regulation or otherwise resulting from a breach of this provision of this Agreement.

**PROTECTION OF COLLATERAL.** Debtor agrees that Lender may, at Lender's sole option, whether before or after any event of default, and without prior notice to Debtor, take the following actions to protect Lender's interest in the Collateral: (a) pay for the maintenance, preservation, repair, improvement, or testing of the Collateral; (b) pay any filing, recording, registration, licensing, certification, or other fees and charges related to the Collateral; or (c) take any other action to preserve and protect the Collateral or Lender's rights and remedies under this Agreement, as Lender may deem necessary or appropriate from time to time. Debtor agrees that Lender is not obligated and has no duty whatsoever to take the foregoing actions. Debtor further agrees to reimburse Lender promptly upon demand for any payment made or any expenses incurred by Lender pursuant to this authorization. Payments and expenditures made by Lender under this authorization shall constitute additional Obligations, shall be secured by this Agreement, and shall bear interest thereon from the date incurred at the maximum rate of interest, including any default rate, if one is provided, as set forth in the notes secured by this obligation.

**INFORMATION AND REPORTING.** The Debtor agrees to supply to the Lender such financial and other information concerning its affairs and the status of any of its assets as the Lender, from time to time, may reasonably request. The Debtor further agrees to permit the Lender, its employees, and agents, to have access to the Collateral for the purpose of inspecting it, together with all of the Debtor's other physical assets, if any, and to permit the Lender, from time to time, to verify Accounts, if any, as well as to inspect, copy, and to examine the books, records, and files of the Debtor.

**CROSS-COLLATERALIZATION.** Debtor agrees that any security interest provided in Collateral under this Agreement or any Collateral provided in connection with any and all other indebtedness of Debtor to Lender, whether or not such indebtedness is related by class or claim and whether or not contemplated by the parties at the time of executing each evidence of indebtedness, shall act as Collateral for all said indebtedness. This cross-collateralization provision shall not apply to any Collateral that is/are household goods or a principal dwelling.

**DEFAULT.** The occurrence of any of the following events shall constitute a default of this Agreement: (a) the non-payment, when due (whether by acceleration of maturity or otherwise), of any amount payable on any of the Obligations or any extension or renewal thereof; (b) the failure to perform any agreement of the Debtor contained herein or in any other agreement Debtor has or may have with Lender; (c) the publication of any





statement, representation, or warranty, whether written or oral, by the Debtor to the Lender, which at any time is untrue in any respect as of the date made; (d) the condition that any Debtor becomes insolvent or unable to pay debts as they mature, or makes an assignment for the benefit of the Debtor's creditors, or conveys substantially all of its assets, or in the event of any proceedings instituted by or against any Debtor alleging that such Debtor is insolvent or unable to pay debts as they mature (failure to pay being conclusive evidence of inability to pay); (e) Debtor makes application for appointment of a receiver or any other legal custodian, or in the event that a petition of any kind is filed under the Federal Bankruptcy Code by or against such Debtor and the resulting proceeding is not discharged within thirty days after filing; (f) the entry of any judgment against any Debtor, or the issue of any order of attachment, execution, sequestration, claim and delivery, or other order in the nature of a writ levied against the Collateral; (g) the death of any Debtor who is a natural person, or of any partner of the Debtor which is a partnership; (h) the dissolution, liquidation, suspension of normal business, termination of existence, business failure, merger, or consolidation or transfer of a substantial part of the property of any Debtor which is a corporation, limited liability company, partnership or other non-individual business entity; (i) the Collateral or any part of the Collateral declines in value in excess of normal wear, tear, and depreciation or becomes, in the judgment of Lender, impaired, unsatisfactory, or insufficient in character or value, including but not limited to the filing of a competing financing statement; breach of warranty that the Debtor is the owner of the Collateral free and clear of any encumbrances (other than those encumbrances disclosed by Debtor or otherwise made known to Lender, and which were acceptable to Lender at the time); sale of the Collateral (except in the ordinary course of business) without Lender's express written consent; failure to keep the Collateral insured as provided herein; failure to allow Lender to inspect the Collateral upon demand or at reasonable time; failure to make prompt payment of taxes on the Collateral; loss, theft, substantial damage, or destruction of the Collateral; and, when Collateral includes inventory, accounts, chattel paper, or instruments, failure of account debtors to pay their obligations in due course; or (j) the Lender in good faith, believes the Debtor's ability to repay the Debtor's indebtedness secured by this Agreement, any Collateral, or the Lender's ability to resort to any Collateral, is or soon will be impaired, time being of the very essence.

**REMEDY.** Upon the occurrence of an event of default, Lender, at its option, shall be entitled to exercise any one or more of the remedies described in this Agreement, in all documents evidencing the Obligations, in any other agreements executed by or delivered by Debtor for benefit of Lender, in any third-party security agreement, mortgage, pledge, or guaranty relating to the Obligations, in the Uniform Commercial Code of the state in which Lender is located, and all remedies at law and equity, all of which shall be deemed cumulative. The Debtor agrees that, whenever a default exists, all Obligations may (notwithstanding any provision in any other agreement), at the sole option and discretion of the Lender and without demand or notice of any kind, be declared, and thereupon immediately shall become due and payable; and the Lender may exercise, from time to time, any rights and remedies, including the right to immediate possession of the Collateral, available to it under applicable law. The Debtor agrees, in the case of default, to assemble, at its own expense, all Collateral at a convenient place acceptable to the Lender. The Lender shall, in the event of any default, have the right to take possession of and remove the Collateral, with or without process of law, and in doing so, may peacefully enter any premises where the Collateral may be located for such purpose. Debtor waives any right that Debtor may have, in such instance, to a judicial hearing prior to such retaking. The Lender shall have the right to hold any property then in or upon said Collateral at the time of repossession not covered by the security agreement until return is demanded in writing by Debtor. Debtor agrees to pay all reasonable costs of the Lender in connection with the collecting of the Obligations and enforcement of any rights connected with retaking, holding, testing, repairing, improving, selling, leasing, or disposing of the Collateral, or like expenses. These expenses, together with interest thereon from the date incurred until paid by Debtor at the maximum post-default rate stated in the notes secured hereby, which Debtor agrees to pay, shall constitute additional Obligations and shall be secured by and entitled to the benefits of this Agreement. The Lender may sell, lease, or otherwise dispose of the Collateral, by public or private proceedings, for cash or credit, without assumption of credit risk. Unless the Collateral is perishable or threatens to decline speedily in value or of a type customarily sold on a recognized market, Lender will send Debtor reasonable notice of the time and place of any public sale or of the time after which any private sale or other disposition will be made. Any notification of intended disposition of the Collateral by the Lender shall be deemed to be reasonable and proper if sent United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means to the Debtor at least ten (10) days before such disposition, and addressed to the Debtor either at the address shown herein or at any other address provided to Lender in writing for the purpose of providing notice. Proceeds received by Lender from disposition of the Collateral may be applied toward Lender's expenses and other obligations in such order or manner as Lender may elect. Debtor shall be entitled to any surplus if one results after lawful application of the proceeds. If the proceeds from a sale of the Collateral are insufficient to extinguish the Obligations of the Debtor hereunder, Debtor shall be liable for a deficiency. Lender shall have the right, whether before or after default, to collect and receipt for, compound, compromise, and settle, and give releases, discharges, and acquittances with respect to, any and all amounts owed by any person or entity with respect to the Collateral. Lender may remedy any default and may waive any default without waiving the default remedied and without waiving any other prior or subsequent default. The rights and remedies of the Lender are cumulative, and the exercise of any one or more of the rights or remedies shall not be deemed an election of rights or remedies or a waiver of any other right or remedy.

**FUTURE ADVANCES AND AFTER-ACQUIRED PROPERTY.** Future advances may be made at any time by the Lender under this Agreement to the extent allowed by law. The security interest grant contained in this Agreement also applies to any Collateral of the type(s) identified in this Agreement that the Debtor acquires after this Agreement is executed, except that no security interest attaches to after-acquired consumer goods unless the Debtor acquires rights in such goods within 10 days of Lender giving value. In anticipation of future advances by Lender, the Debtor authorizes Lender to file any necessary financing statements to protect Lender's security interest.

**EXERCISE OF LENDER'S RIGHTS.** Any delay on the part of the Lender in exercising any power, privilege, or right hereunder, or under any other document executed by Debtor to the Lender in connection herewith, shall not operate as a waiver thereof, and no single or partial exercise thereof or any other power, privilege, or right shall preclude other or further exercise thereof. The waiver by the Lender of any default of the Debtor shall not constitute a waiver of subsequent default.

**CONTINUING AGREEMENT.** This is a continuing agreement and the security interest (and pledge and assignment, as applicable) hereby granted and all of the terms and provisions of this Agreement shall be deemed a continuing agreement and shall remain in full force and effect

© 2004-2016 Compliance Systems, Inc. 9814427b3-db8a6470 - 2016.287.0.2
Agricultural - Security Agreement DL4008

www.compliancesystems.com




until the Obligations are paid in full. In the event that Lender should take additional Collateral, or enter into other security agreements, mortgages, guarantees, assignments, or similar documents with respect to the Obligations, or should Lender enter into other such agreements with respect to other obligations of Debtor, such agreements shall not discharge this Agreement, which shall be construed as cumulative and continuing and not alternative and exclusive.

Any attempted revocation or termination shall only be effective if explicitly confirmed in a signed writing issued by Lender to such effect and shall in no way impair or affect any transactions entered into or rights created or liabilities incurred or arising prior to such revocation or termination, as to which this Agreement shall be truly operative until same are repaid and discharged in full. Unless otherwise required by applicable law, Lender shall be under no obligation to issue a termination statement or similar document unless Debtor requests same in writing, and providing further, that all Obligations have been repaid and discharged in full and there are no commitments to make advances, incur any obligations, or otherwise give value.

**ABSENCE OF CONDITIONS OF LIABILITY.** This Agreement is unconditional. Lender shall not be required to exhaust its remedies against Debtor, other collateral, or guarantors, or pursue any other remedies within Lender's power before being entitled to exercise its remedies hereunder. Lender's rights to the Collateral shall not be altered by the lack of validity or enforceability of the Obligations against Debtor, and this Agreement shall be fully enforceable irrespective of any counterclaim which the Debtor may assert on the underlying debt and notwithstanding any stay, modification, discharge, or extension of Debtor's Obligation arising by virtue of Debtor's insolvency, bankruptcy, or reorganization, whether occurring with or without Lender's consent.

**NOTICES.** Any notice or demand given by Lender to Debtor in connection with this Agreement, the Collateral, or the Obligations, shall be deemed given and effective upon deposit in the United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means addressed to Debtor at the address designated at the beginning of this Agreement, or such other address as Debtor may provide to Lender in writing from time to time for such purposes. Actual notice to Debtor shall always be effective no matter how such notice is given or received.

**WAIVERS.** Debtor waives notice of Lender's acceptance of this Agreement, defenses based on suretyship, and to the fullest extent permitted by law, any defense arising as a result of any election by Lender under the Bankruptcy Code or the Uniform Commercial Code. Debtor and any maker, endorser, guarantor, surety, third-party pledgor, and other party executing this Agreement that is liable in any capacity with respect to the Obligations hereby waive demand, notice of intention to accelerate, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor, and any other similar notice whatsoever.

**JOINT AND SEVERAL LIABILITY.** To the extent permitted by law, each Debtor executing this Agreement is jointly and severally bound.

**SEVERABILITY.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law; but, in the event any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity and shall be severed from the rest of this Agreement without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Agreement shall be binding on all heirs, executors, administrators, assigns, and successors of Debtor.

**ASSIGNABILITY.** Lender may assign, pledge, or otherwise transfer this Agreement or any of its rights and powers under this Agreement without notice, with all or any of the Obligations, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Debtor may not assign this Agreement or any benefit accruing to it hereunder without the express written consent of the Lender.

**AUTHORIZATIONS.** Debtor authorizes Lender, without notice or demand and without altering Debtor's liability or Lender's rights hereunder, from time to time to take acts which may alter the Obligation of Debtor to Lender or Debtor's right to restitution or subrogation or both, including to the extent allowed by law:
- (a) Renewing, compromising, extending, or otherwise changing the time for payment of, or otherwise changing the terms of the Obligations or any part thereof, including increasing the rate of interest;
- (b) Extending additional credit to Debtor in any manner for any purpose;
- (c) Incurring costs, including attorneys' fees, with respect to enforcing Lender's rights with respect to the Obligations, and Collateral securing the Obligations;
- (d) Exchanging, enforcing, waiving, or releasing (whether intentionally or unintentionally) any security for the Obligations or any part thereof or purchase such security at private or public sale and to file any financing statements necessary for Lender to perfect or protect Lender's security interest;
- (e) Settling, releasing, compromising with, or substituting any one or more endorsers, guarantors, or other obligors or the Obligations;
- (f) Impairing the value of Lender's interest in Collateral through failure to obtain or maintain protection, failure to obtain or maintain recordation of an interest, or through failure to perform a duty owed to Debtor to preserve the Collateral; and
- (g) Applying all monies received from Debtor and others or from Collateral in Lender's discretion without in any way being required to marshal assets.

**GOVERNING LAW.** This Agreement has been delivered in the State of Arkansas and shall be construed in accordance with the laws of that state.

**HEADINGS AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

  

**MISCELLANEOUS.** Time is of the essence of this Agreement. Except as otherwise defined in this Agreement, all terms herein shall have the meanings provided by the Uniform Commercial Code as it has been adopted in the state of Arkansas. All rights, remedies, and powers of the Lender hereunder are irrevocable and cumulative, and not alternative or exclusive, and shall be in addition to all rights, remedies, and powers given hereunder or in or by any other instruments or by the provision of the Uniform Commercial Code as adopted in the state where the Lender is located, or any other laws, now existing or hereafter enacted. The Debtor specifically agrees that, if it has heretofore or hereafter executed any loan agreement in conjunction with the Agreement, any ambiguities between this Agreement and any such loan agreement shall be construed under the provisions of the loan agreement, to the extent that it may be necessary to eliminate any such ambiguity. Debtor releases Lender from any liability which might otherwise exist for any act or omission of Lender related to the collection of any debt secured by this Agreement or the disposal of any Collateral, except for the Lender's willful misconduct.

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ADDITIONAL PROVISIONS.**

HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or make possible the production of an agricultural commodity, as provided by 7 CFR Part 12

**ACKNOWLEDGMENT.** Debtor acknowledges agreeing to all of the provisions in this Agreement, and further acknowledges receipt of a true and complete copy of this Agreement.

**IN WITNESS WHEREOF,** Debtor has executed this Agreement on the date and year shown below.

_____  20170123    _____  1-23-17
Caleb Jerel Beene                 Date         Michelle Lynn Beene              Date
Individually                                   Individually

Caleb Jerel Beene d/b/a Beene Poultry Farm

_____  20170123    _____  1-23-17
By: Caleb Jerel Beene             Date         By: Michelle Lynn Beene          Date
Its: Owner                                     Its: Owner


**LENDER:** First Service Bank, Mountain View

_____  1-23-17
By: Preston Hipp                  Date
Its: Loan Officer




Clerk's Certification of Record
State of Arkansas - Yell County - Dardanelle District
I, SHARON BARNETT, Circuit Clerk and Ex-Officio
Recorder of the County aforesaid do
hereby certify that this instrument was
filed for the record on

1/25/2017 at 2:09:23 PM
and the same is now duly recorded in

Book 565 Pages 391 - 393
Witness my hand and the seal of said Court
01/25/2017 at 02:11 PM
SHARON BARNETT
Circuit Clerk and Ex-Officio Recorder
By _____, D.C.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Loan Processing Center (501) 679-7200

**B. E-MAIL CONTACT AT FILER (optional)**
Brooklyn.Cardin@firstservicebank.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

Attn: Loan Processing Center
First Service Bank
P.O. Box 190
Greenbrier, AR 72058

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Caleb Beene DBA Beene Poultry Farm | | | | |
| **1b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **1c. MAILING ADDRESS** 18205 State Highway 154 | CITY Danville | STATE AR | POSTAL CODE 72833 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **2b. INDIVIDUAL'S SURNAME** Beene | FIRST PERSONAL NAME Caleb | | ADDITIONAL NAME(S)/INITIAL(S) Jeral | SUFFIX |
| **2c. MAILING ADDRESS** 18205 State Highway 154 | CITY Danville | STATE AR | POSTAL CODE 72833 | COUNTRY USA |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| First Service Bank | | | | |
| **3b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **3c. MAILING ADDRESS** P.O. Box 190 | CITY Greenbrier | STATE AR | POSTAL CODE 72058 USA | COUNTRY |

**4. COLLATERAL:** This financing statement covers the following collateral:

All Farm Equipment, now owned or hereafter acquired, including but not limited to pan feeders with tubes and micro switch control pans, chain feeder with winches, lines lubing water, winching pan feeder, lines winching with cord drops, shocker assembly, fogger system with pump, bins, fill system, heaters, regulators with hose kits and fittings, fans, vents, vent machines and winching, inlet curtain machine, inlet curtains, medicators with hoses, water meters, drills and cranks, sensor wire, mini drinkers, dimmer, fence with stands, alarm, fuel tank, amp switch, feed carts and scoops, bulbs, brood light, feed trays, gas regulators, gas plumbing, incinerator, and Assignment of Grower Checks between Borrower and Wayne Farms, LLC.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☑ Agricultural Lien   ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
XXXX416

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)     International Association of Commercial Administrators (IACA)

565                                    391

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
**Caleb Beene DBA Beene Poultry Farm**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only *one* additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME
**Beene**

INDIVIDUAL'S FIRST PERSONAL NAME
**Michelle**

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)
**Lynn** | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **18205 State Highway 154** | **Danville** | **AR** | **72833** | **USA** |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME *or* ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only *one* name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

**13.** ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**See Attached Exhibit A**

**17. MISCELLANEOUS:**

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

392

# EXHIBIT A

A part of the NE ¼ of the SE ¼ of Section 4, T-5-N, R-21-W, in Yell County, Arkansas, and being more particularly described as:  Beginning at the NW-Corner of the NE ¼ of the SE ¼; thence S 88° 15' 00" E, along the North line of the NE ¼ of the SE ¼, a distance of 660.00 feet; thence S 00° 11' 55" W, a distance of 1030.00 feet; thence S 89° 19' 53" E, a distance of 374.00 feet; thence S 00° 11' 55" W, a distance of 299.58 feet to the South line of the NE ¼ of the SE ¼; thence, along the South line, N 88° 49' 03" W, a distance of 1033.90 feet to the SW-Corner of the NE ¼ of the SE ¼; thence N 00° 11' 55" E, a distance of 1332.76 feet to the point of beginning.

565        393

# Arkansas Secretary of State

State Capitol / Little Rock, AR 72201 / 501.682.5078

# UCC ONLINE FILING

### UCC - New Filing

| | |
|---|---|
| Filing Number: | 40000141726853 |
| Filing Time: | 1/25/2017 09:47 AM |
| Expiration Date: | 1/25/2022 12:00 AM |
| Reference Number: | 20170125093697637 |
| Optional Filer Reference Data: | XXXX416 |

---

Debtor (1)

| | |
|---|---|
| Company Name: | CALEB JEREL BEENE D/B/A BEENE POULTRY FARM |
| Mailing Address: | 18205 HIGHWAY 154 |
| City: | DANVILLE |
| State: | AR |
| Zip Code: | 72833 |
| Country: | USA |

---

Debtor (1)

| | |
|---|---|
| Surname: | BEENE |
| First Personal Name: | CALEB |
| Additional Name(s)/Initial(s): | JEREL |
| Suffix: | |
| Mailing Address: | 18205 HIGHWAY 154 |
| City: | DANVILLE |
| State: | AR |
| Zip Code: | 72833 |
| Country: | USA |

---

Debtor (1)

| | |
|---|---|
| Surname: | BEENE |
| First Personal Name: | MICHELLE |

Additional Name(s)/Initial(s): LYNN

Suffix:

Mailing Address:          18205 HIGHWAY 154

City:                     DANVILLE

State:                    AR

Zip Code:                 72833

Country:                  USA

---

Secured Party (3)

Company Name: FIRST SERVICE BANK

Mailing Address: P.O. BOX 190

City:            GREENBRIER

State:           AR

Zip Code:        72058

Country:

---

Description of Collateral:

ALL FARM EQUIPMENT, NOW OWNED OR ACQUIRED HEREAFTER, INCLUDING BUT NOT LIMITED TO GENERATORS, TRANSFER SWITCHES, FUEL TANKS, SHEDS, LINES OF FEEDERS, HOPPERS, FEED LINE AUGER MOTORS, IPLUS CONTROL PANS, WINCHES FOR FEED LINES, BINS, FILL SYSTEMS, DIRECT DRIVE POWER UNITS, LINES OF DRINKERS, REGULATORS, MIDLINE AIR VENTS, END KITS, AV SERIES TUBE BROODERS ON BROOD END, AV SERIES TUBE BROODERS ON GROW OUT END, ALL LIGHTING, HIRED HAND TUNNEL FANS, STIR FANS, HIRED HAND VENT FANS, VENT DOORS, VENT MACHINE, PLATINUM PLUS CONTROLLER WITH TOGGLE RELAY PANELS, STATIC PRESSURE MODULE, ELECTRIC WATER METERS, TEMP PROBES, OUTSIDE TEMP PROBES, SURGE PROTECTOR, COMMUNICATOR ALARM, COPPER WIRING, MIGRATION FENCES, MEDICATORS, STEP LADDERS, TRASH CANS, DRILL AND CRANKS, HAND CRANKS, LITTLER BLADE, BLOWER, HOUSE KEEPERS, POULTRY HOUSE WASHER, AND ASSIGNMENT OF GROWER CHECKS BETWEEN BORROWER AND WAYNE FARMS, LLC, ASSIGNMENT OF LIFE INSURANCE POLICY NUMBER 012412356L ON CALEB JEREL BEENE IN THE AMOUNT OF $500,000.00

---

Alternative Designation (if applicable):

Lessee/Lessor

Consignee/Consignor

Bailee/Bailor

Seller/Buyer

Licensee/Licensor

---

This FINANCING STATEMENT is to be filed [for record](or recorded) in the REAL ESTATE RECORDS.

This FINANCING STATEMENT covers:

timber to be cut

as-extracted collateral

is filed as a fixture filing.

Description of Real Estate:

---

Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

---

Collateral is:

held in a trust

being administered by a Decedent's Personal Representative

---

Not Applicable

X   Ag. Lien

Non-UCC Filing

X   Not Applicable

Debtor is a Transmitting Utility

Filed in connection with a Manufactured-Home Transaction - effective 30 years.

Filed in connection with a Public-Finance Transaction - effective 30 years.

---